IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VERONICA ALVAREZ,

       Plaintiff,

vs.                                                                                    No. CV 15-1118 LH/CG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Veronica Alvarez's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 29), filed September 19, 2016; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Response"), (Doc. 32), filed December 2, 2016; and Ms. Alvarez's *Reply in Support of Motion to Reverse and Remand for Rehearing with Supportive Memorandum* (the "Reply"), (Doc. 34), filed December 16, 2016. District Judge C. LeRoy Hansen referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition of the case. (Doc. 8).

On May 17, 2007, Veronica Alvarez applied for Supplemental Social Security Income under Title II of the Social Security Act, alleging disability beginning on June 1, 2005. (Administrative Record "AR" 129-131). Ms. Alvarez's claim was initially denied on July 16, 2010, (AR 68-71), and again upon reconsideration on September 15, 2010. (AR 72-75). A request for a hearing was filed, (AR 80-81), and a hearing was held on August

2, 2011, before Administrative Law Judge David R. Wurm. (AR 39-63). Ms. Alvarez, John W. Hickman, an impartial medical expert, and Mary Diane Weber, an impartial vocational expert ("VE") testified at the hearing. (AR 39-63). Ms. Alvarez was represented at the hearing by non-attorney representative Will Sanchez. (AR 25). The ALJ issued an unfavorable decision on September 20, 2011, finding that Ms. Alvarez was not disabled under the SSA. (AR 22-38).

Through current counsel, Michael D. Armstrong, Ms. Alvarez filed an application for review by the Appeals Council on October 24, 2011, (AR 16-17), which was denied on February 22, 2013, (AR 1-5), making the decision of ALJ Wurm the final decision of the Commissioner of the Social Security Administration (the "Commissioner" and "SSA"). This Court reviewed the case and remanded it back to the ALJ to "consider the entire record." (AR 410).

ALJ Eric Weiss held a second hearing for Ms. Alvarez on August 12, 2015. (AR 336-374). Ms. Alvarez and VE Evelyn Hartman testified at the hearing. (*Id.*). ALJ Weiss issued a partially favorable decision on August 28, 2015. (AR 312-335). ALJ Weiss found Ms. Alvarez disabled from February 23, 2010 through January 27, 2013. (AR 316). However, the ALJ determined that beginning on January 28, 2013, Ms. Alvarez showed medical improvement related to her ability to work; therefore, her disability ended on January 28, 2013. (AR 316-17). Ms. Alvarez filed an application for review by the Appeals Council, which was denied on February 22, 2013, (AR 418-422), making the decision of ALJ Weiss the final decision of the Commissioner for purposes of this appeal.

Ms. Alvarez argues that the ALJ committed reversible, legal error by failing to (1) analyze whether her disabling impairments were in "temporary remission," and (2) demonstrate that any medical improvement was "related" to her ability to work.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not consider whether Ms. Alvarez's medical improvement was based on a temporary remission, the Court **RECOMMENDS** that the Motion be **GRANTED**.

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.     Background

Ms. Alvarez applied for supplemental security income alleging bi-polar disorder with psychotic features, post-traumatic stress disorder ("PTSD"), and severe anxiety. (AR 161). At step one, the ALJ determined that Ms. Alvarez has not engaged in substantial gainful activity since February 23, 2010. (AR 319-320). At step two, the ALJ concluded that between February 23, 2010 and January 27, 2013, Ms. Alvarez was severely impaired by: (1) an unspecified episodic mood disorder; (2) attention deficit hyperactivity disorder without mention of hyperactivity; (3) generalized anxiety disorder; (4) panic disorder; and (5) major depression. (AR 10).

At step three, the ALJ explained that he considered whether Ms. Alvarez's impairments met or satisfied any of the listed impairments during the time period from February 23, 2010 to January 27, 2013. He determined that none of Ms. Alvarez's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R §§ 416.920(d), 416.925, and 416.926.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ proceeded to step four. First, he analyzed Ms. Alvarez's subjective complaints of her physical and psychological symptoms and the objective medical evidence in the record for February 23, 2010 to January 27, 2013. (AR 321-324). The ALJ found that Ms. Alvarez's statements as to the intensity, persistence, and limiting effects of her symptoms were generally credible from February 23, 2010 through January 27, 2013. (AR 324). The ALJ discussed the findings of Ms. Alvarez's treating physicians and the reports and opinions of medical consultants. (AR 322-325).

The ALJ ultimately found that between February 23, 2010 and January 27, 2013, Ms. Alvarez had the RFC to perform a full range of work at all exertional levels, but with several nonexertional limitations. (AR 321). Ms. Alvarez was able to: (1) understand, remember, and carry out simple instructions; (2) make commensurate work related decisions; (3) adjust to routine changes in the workplace; and (4) occasionally interact with supervisors. Ms. Alvarez could not interact with coworkers and the general public and would be off task 15 minutes every 2 hours during an 8 hour work day, in addition to regular breaks. (AR 321).

The ALJ then explained that from February 23, 2010 to January 27, 2013, Ms. Alvarez could not perform any of her past relevant work. (AR 325). Accordingly, the ALJ proceeded to step five. At step five, the ALJ inquired whether Ms. Alvarez would be able to perform any other work existing in significant numbers in the national economy. (AR 325-326). The ALJ found that between February 23, 2010 and January 27, 2013, there were no jobs that existed in significant numbers in the national economy that Ms. Alvarez could perform; therefore, Ms. Alvarez was disabled during this period of time. (AR 325-326).

The ALJ re-analyzed Ms. Alvarez's disability beginning on January 28, 2013. (AR 326-331). At step two, the ALJ found that Ms. Alvarez had the same severe impairments. (AR 326). At step three, the ALJ concluded that none of Ms. Alvarez's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. § 416.994(b)(5)(i). (AR 326-328).

At step four, the ALJ found that Ms. Alvarez's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 329). The ALJ discussed medical records from Edwin B. Hall, M.D. The ALJ noted that the record did not contain any current treating source statements or consultative examiners reports. (AR 329). Based on this information, the ALJ determined that beginning on January 28, 2013, Ms. Alvarez had the RFC to perform a full range of work at all exertional levels, but with some nonexertional limitations. (AR 328). Ms. Alvarez can: (1) understand, remember and carry out instructions; (2) make commensurate work related decisions; (3) adjust to routine changes in the workplace; (4) have occasional interactions with supervisors, coworkers, and the general public; and (5) maintain concentration, persistence, and pace for 2 hours at a time during an 8 hour work day with normal breaks. (AR 328). The ALJ then explained that, based on the testimony from the VE, Ms. Alvarez is unable to perform any of her past relevant work. (AR 330).

At step five, the ALJ found, considering Ms. Alvarez's age, education, work experience, and RFC, that there are jobs existing in significant numbers in the national economy that she can perform. (AR 330). Therefore, as of January 28, 2013, Ms. Alvarez was no longer disabled pursuant to 20 C.F.R. §§ 416.960(c) and 416.966. (AR 330).

**IV.     Analysis**

Ms. Alvarez argues that the ALJ committed reversible, legal error by failing to (1) analyze whether her disabling impairments were in "temporary remission," and (2) demonstrate that any medical improvement was "related" to her ability to work. (Doc. 29 at 5).

The Commissioner responds that the ALJ correctly applied the medical improvement standard in determining that Ms. Alvarez was not disabled beginning January 28, 2013. (Doc. 32 at 4-7). The Commissioner further argues that the ALJ correctly determined that Ms. Alvarez's medical improvement was related to her ability to work. (Doc. 32 at 7-8).

   A.  *Medical Improvement and Temporary Remission*

To determine whether a claimant continues to be disabled, the Commissioner must decide if a claimant has had any medical improvement with regard to her medical impairments and whether that improvement is related to the claimant's ability to work. 20 C.F.R. § 416.994(b). A medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *Id.* at § 416.994(b)(1)(i). This determination must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments." *Id.*

In cases where "the evidence shows that an individual's impairments are subject to temporary remission," the Commissioner will consider more evidence in determining medical improvement. 20 C.F.R. § 404.1594(c)(3)(iv). For these individuals, the

Commissioner will look at the "longitudinal history of the impairments, including the occurrence of prior remission, and the prospects for future worsening." *Id.* Improvements in these impairments that are only temporary "will not warrant a finding of medical improvement." *Id.*

The SSA's Program Operations Manual System ("POMS"), which contains the SSA's internal rules of procedure, lists impairments that are subject to temporary remission. *See* POMS DI 28010.115(B)(2). The list includes "many mental impairments." For these impairments, the POMS states that the Commissioner should "carefully consider the longitudinal history of the impairment, including the occurrence of prior remissions and prospects for future worsening." POMS DI 28010.115(A).

B. *Temporary Remission*

Ms. Alvarez argues that the ALJ erred by failing to assess whether her medical improvement was based on a temporary remission of her medical conditions. (Doc. 29 at 9-12). Beginning January 28, 2013, the ALJ found that Ms. Alvarez's medical impairments decreased in severity based on Ms. Alvarez's testimony about her activities of daily living and medical records from her doctor, Dr. Hall. Prior to January 28, 2013, the ALJ found that Ms. Alvarez had moderately restricted activities of daily living, moderately limited social functioning, and marked deficiencies in concentration, persistence, or pace. (AR 321). By contrast, starting on January 28, 2013, the ALJ concluded that Ms. Alvarez's impairments had improved such that she was mildly restricted in activities of daily living, moderately limited in social functioning, and had moderate deficiencies in concentration, persistence, and pace. (AR 327).

The ALJ analyzed Ms. Alvarez's medical record from Dr. Hall and found that on January 28, 2013, Dr. Hall "noted that the claimant continued to be stable on medication and had started attending classes at a community college as she 'is happy and she is successful.'" (AR 328). Based on this note and one from December 2012, in which Dr. Hall found that Ms. Alvarez was "'stable on her current medication regime,'" the ALJ found that Ms. Alvarez showed medical improvement. (AR 328). Specifically, the ALJ noted that "the medical evidence of record indicates that once a proper combination of medications was found to manage the claimant's symptoms, and she was compliant in taking them, she showed significant medical improvement and her disability ended." (AR 328).

The ALJ focused on two specific treatment notes in determining that Ms. Alvarez showed medical improvement, but it does not appear from his Opinion that he considered whether the improvement could be a temporary remission. The ALJ found that Ms. Alvarez suffers from several severe mental illnesses, including (1) an unspecified episodic mood disorder; (2) attention deficit hyperactivity disorder without mention of hyperactivity; (3) generalized anxiety disorder; (4) panic disorder; and (5) major depression. Ms. Alvarez's medical record also shows that she has undergone different phases of stability and instability with her conditions. Between December 28, 2012 and August 20, 2013, Dr. Hall noted that Ms. Alvarez was stable on her medication and her symptoms were managed. (AR 652-665).

However, after this time period, Ms. Alvarez's symptoms appear to have worsened. In November 2013, Ms. Alvarez reported feeling irritable and angry, but did not have any other psychiatric issues. (AR 648). Dr. Hill started Ms. Alvarez on new

10

medication. (AR 650). Ms. Alvarez went off her medication in February 2014 and experienced racing and disorganized thoughts, irritable moods, sleep disruptions, and a decrease in her concentration and attention. (AR 644). At this time, Dr. Hill stated he had Ms. Alvarez resume her medication. (AR 646). In June 2014, Ms. Alvarez reported feeling overwhelmed. (AR 642). In November 2014, Dr. Hill noted that Ms. Alvarez had anxiety, depression, PTSD nightmares, and flashbacks. (AR 633). On December 27, 2014, Dr. Hill found that Ms. Alvarez was having issues with her mood and memory, flashbacks, and increasingly vivid dreams. (AR 628).

The ALJ noted that Ms. Alvarez experienced a worsening of her symptoms in February to December 2014, but attributed this to a "trend of medication non-compliance." (AR 329). However, the ALJ does not consider the "longitudinal history" of Ms. Alvarez's impairment. The ALJ does not discuss the evidence from November 2013 that Ms. Alvarez began to feel irritable and angry while on medication. Additionally, after appearing to resume medication in February 2014, Ms. Alvarez continued to experience anxiety and depression. Based on Ms. Alvarez's impairment and her medical history, it was error for the ALJ not to analyze whether she was temporarily in remission beginning on January 28, 2014. Because it is the Commissioner's burden to show that an individual has the ability to engage in substantial gainful activity, the Commissioner must ensure that a medical improvement is permanent before determining that an individual is no longer disabled. *See Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994).

The Commissioner argues that Ms. Alvarez's condition improved for over a year, from January 2013 to February 2014; therefore, the improvement was not a "temporary"

remission. (Doc. 32 at 6). The Commissioner cites to 20 C.F.R. § 416.905(a) for this proposition; however, that section defines the term disability, not the term "temporary remission." Neither the Regulations nor the POMS define a period of time that a remission may be considered temporary. Because the ALJ did not address the issue of a temporary remission, the Court will not determine if one year is "temporary;" however, the ALJ should address the issue on remand.

## V.     Recommendation

For the foregoing reasons, the Court concludes that the ALJ should have analyzed whether Ms. Alvarez's medical improvement was a temporary remission.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 29), filed September 19, 2016, be **GRANTED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE